21843

The STATE, Respondent, v. Jack BLANTON, Joseph Blanton, Myrtie Blanton, Richard Blanton, and Stewart Blanton, Defendants, of whom Jack Blanton is Appellant.

(300 S. E. (2d) 286)

*H. E. McCaskill* and *Irby E. Walker, Jr.*, Conway, *for appellant.*

*Atty. Gen. Daniel R. McLeod, Asst. Atty. Gen. Harold M. Coombs, Jr.*, and *Staff Atty. Carlisle Roberts, Jr.*, Columbia, and *Sol. James O. Dunn*, Conway, *for respondent.*

Jan. 4, 1983.

LITTLEJOHN, Justice:

This proceeding, charging Appellant Jack Blanton with contempt of court, was commenced by the issuance of a Rule to Show Cause by the presiding judge of the Court of General Sessions of Horry County. It required Blanton to show cause why he should not be held in contempt of court for attempting to influence the Horry County Grand Jury and more particularly its Foreman. After the taking of evidence, the judge found Blanton guilty and sentenced him to confinement for four months. Blanton appeals.

Blanton and his brother (Joe) were charged in warrants with assault and battery of a high and aggravated nature upon each other growing out of an altercation, which was later reduced by the Grand Jury to the common law offense of an affray. A preliminary hearing had been held and both were

bound over for action by the Grand Jury. Blanton had employed two attorneys to represent him. On the day before the Grand Jury met, he was served with a subpoena to appear before the Grand Jury to testify against his brother, Joe. That evening, he phoned the Foreman of the Grand Jury, with whom he was not acquainted, ostensibly for the purpose of inquiring whether he should bring witnesses with him. Some of the facts incident to the telephone call are not in dispute. Other facts have been determined by the presiding judge adversely to Blanton, resulting in his conviction and sentence.

According to the testimony of the Foreman of the Grand Jury, Blanton first inquired as to whether he should bring his witnesses with him to the Grand Jury room. If this were the extent of the telephone call, Blanton might be held blameless. The Foreman testified, however, that the conversation lasted some ten to fifteen minutes. It was Blanton's testimony that the conversation lasted perhaps two minutes and that of his wife that the conversation lasted some five or six minutes.

The next day the Grand Jury met and returned a True Bill as to both of the Blantons, reducing the charge from that of assault and battery of a high and aggravated nature to that of an affray. Later, the Foreman reported the telephone call to the Solicitor; the Judge issued the Rule to Show Cause resulting in the hearing.

Blanton submits that the trial judge erred in refusing a jury trial.

In the Order and Rule to Show Cause, Appellant was alleged to be "in violation of Section 16-9-350, Code of Laws of South Carolina, 1976 as amended and/or in contempt of the Court of General Sessions of Horry County." At the beginning of the trial, the State elected to proceed under the inherent contempt power of the Court of General Sessions, electing not to proceed under the Statute. It has long been established that there is no right to a jury trial, when the circuit courts of this state proceed under its common law contempt powers.

In *State v. Goff*, 228 S. C. 17, 88 S. E. (2d) 788 (1955), which involved a contempt proceeding, tried by the judge without a jury, this Court said:

> There can be no doubt about the power of the courts of general jurisdiction in this State to punish for contempt.

This power is not derived from any statute but from the common law which from its inception recognized this implied and necessary power, without which contumacious conduct could well destroy the authority of any Court.

The court is not dependent upon the jury to protect its integrity under the facts enumerated hereinabove. We find no error in the lower court's refusal to order a jury trial.

Next, Appellant asserts that the trial judge erred in allowing into evidence a copy of the subpoena received by Appellant, which pertained to his scheduled appearance before the Grand Jury. Appellant argues that the State should have been required to issue a notice to produce the subpoena. Instead, the State introduced a copy of the subpoena. There has been no showing made by Appellant that he was prejudiced by this action of the trial court. We find no error.

Finally, Blanton argues that the lower court's finding that his attempt to influence the Foreman is erroneous. It is his contention that he was merely requesting information as to whether he could bring additional witnesses to testify before the Grand Jury and was not attempting to improperly influence anyone. We have reviewed the entire record which the presiding judge had before him. This record reveals ample evidence to warrant a finding of contempt. Our determination, as was the determination of the trial judge, is based on the whole of the showing. We print a portion of the testimony of the Foreman:

Q. All right sir, and if you would, relate to the judge what conversation you had with the man that identified himself to you as Jack Blanton.

A. Approximately seven-thirty this night, Wednesday night, a man called, identifying himself as Jack Blanton — which I didn't know Mr. Blanton — called and asked if I was serving on the Grand Jury, and I stated to him that I was. He made the statement that he didn't know where it was proper or not for him to contact me or not, but he had been advised to.

COURT: Yes sir. You go right on.

A. We talked in generalities of some things, and he made the comment that — he or I made the comment that he didn't know me or I didn't know him, but his wife knew my wife from prior employment. I believe, after this — we talked of this, that he made the statement that he and his brother didn't seem to could get together and settle the issue, . . . and he went on, at this point, to ask me if we would please hear his witnesses, which he stated he had several.

. . . .

Q. All right sir, did he indicate to you that he knew the Grand Jury was meeting the next day?

A. He did, sir.

Q. All right, did he inquire of you if you were the Foreman of the Grand Jury?

A. The word Foreman, to my knowledge, wasn't mentioned. He asked if I was a member of the Grand Jury, or if I was on the Grand Jury.

Q. And what did you reply to him?

A. That I was.

. . . .

Q. All right now, what, if any, statements did Mr. Blanton make to you about who he was and where he lived, and his status in the community?

A. He did not refer to where he lived, but he referred that he had tried to be a good citizen, and he had made some statement to some of the deeds that he made into the — some of the good things he had done, or tried to do, into the community.

. . . .

Q. Could you tell us how many times he referred to his standing in his community and his striving —

A. It came up more than one time.

Q. More than one time?

A. Yes sir.

. . . .

Q. The net effect of what he had to say to you was, hear all the witnesses?

A. I believe his statement was, would you listen — would you please listen to my witnesses.

Appellant Blanton was a Magistrate in Horry County. He was more cognizant of the impropriety of approaching a juror than would be the ordinary citizen. He testified that he had "... been to Criminal Justice courses enough that I know you do not try to tamper with a jury, influence a jury any way, fashion or form." He testified in the record:

> Q. Well, in your Magistrate Handbook, doesn't it contain the statute, or denotes to the effect that it is improper to try to influence a member of a Grand Jury or juror?
> A. Yes sir, it is.
> Q. No doubt about that, is there?
> A. On influence, no doubt at all.

The record reveals a subtle and indirect attempt to influence the Foreman. Blanton testified that he phoned a Magistrate friend and attempted to phone the Solicitor to get the information he ostensibly sought but was unable to reach them. He did not phone his two attorneys which would have been the logical thing for him to do. Obviously, they would have advised him not to pursue the Foreman of the Grand Jury.

Mr. Blanton had some familiarity with the workings of the Grand Jury system. The lower court properly found that his actions constituted a willful attempt to improperly influence the Foreman of the Grand Jury in discharging his duties.

This Court, as well as the lower court, view any attempt to influence the decision-making process of the Grand Jury as a grave and serious matter. The trial judge stated this succinctly during the hearing in the following manner:

> The Grand Jury, of course, must be unhampered by any possible influence, any attempt to possibly influence them in any way whatsoever, for their purpose, of course, is to protect the people, protect the people against the State. As a matter of fact, that's one of the things that's built in for them. That's the very purpose, is to protect them from unwarranted prosecution and persecution by the State of South Carolina, and their actions and doings and administration must not be hampered in any way whatsoever.

Accordingly, the Order of the Circuit Court is hereby Affirmed.

LEWIS, C. J., and NESS, GREGORY and HARWELL, JJ., concur.